IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JUNE O'HEARN, Individually and Derivatively on Behalf of MEDIENT STUDIOS, INC., | ) ) ) ) |
| Plaintiff, | ) Civil Action No.: 4:14-cv-00186-BAE-GRS ) |
| vs. | ) ) |
| CHARLES KOPPELMAN, JOSEPH GIAMICHAEL, DAVID PATERSON, JOEL SHAPIRO a/k/a JAKE SHAPIRO, MANU KUMARAN and MEDIENT STUDIOS, INC. a/k/a MEDIENT STUDIOS INDIA PVT, LTD., | ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS CHARLES KOPPELMAN, JOSPEH GIAMICHAEL, DAVID PATERSON, JOEL SHAPIRO a/k/a JAKE SHAPIRO and MEDIENT STUDIOS, INC.'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

NOW COME DEFENDANTS CHARLES KOPPELMAN, JOSPEH GIAMICHAEL, DAVID PATERSON, JOEL SHAPIRO a/k/a JAKE SHAPIRO and MEDIENT STUDIOS, INC. (collectively, the "Defendants"), and hereby file this Motion to Dismiss and Brief in Support pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. § 78u-4(b)), on the grounds that Plaintiff's claims contained in her Complaint (the "Complaint") filed herein fail to state a claim upon which relief can be granted, and that Plaintiff lacks standing to assert the claims to the extent they are asserted in her individual capacity.

## I.     FACTS

### A.     The Parties

Defendant Medient Studios, Inc. ("Medient") is a small publicly traded company organized and existing pursuant to the laws of the State of Nevada, with its principal place of business located in Effingham County, Georgia. (*See* Compl. ¶¶ 7, 9, 10.) Defendants Charles Koppelman ("Koppelman"), Joseph Giamichael ("Giamichael"), Joel Shapiro a/k/a Jake Shapiro ("Shapiro"), and Manu Kumaran ("Kumaran") are alleged to be officers and/or directors of Medient. (*See* Compl. ¶¶ 12, 15, 24.)[1]

Plaintiff alleges that she is a shareholder of Medient and that she "has owned 3,000,000 common shares in Medient [] at all times relevant to this action." (*See* Compl. ¶ 1.) Plaintiff purports to bring this action in her individual capacity and derivatively on behalf of Medient. (*See* Compl. at p.1.)

### B.     Background

Medient is a publicly-traded film production and distribution company located in Effingham County, Georgia. (*See* Compl. ¶ 9.) According to the Complaint, on or about August 21, 2013, Medient entered into a lease agreement with the Effingham County Industrual Development Authority for a 20 year term to develop a state-of-the-art studio. (*See* Compl. ¶¶ 13-14.)

### C.     Medient Files a Proxy Statement

---

[1] The Complaint fails to even allege that Defendant David Paterson ("Paterson") was an officer or director of Medient. Paterson became a member of Medient's Board of Directors on May 22, 2014. (*See* Ex. A to Declaration of John Tatum, dated September 16, 2014 ("Tatum Decl.").)

The Complaint alleges that on February 13, 2014, Medient filed a Schedule 14C Information Statement pursuant to Section 14(c) of the Securities and Exchange Act of 1934 (the "Information Statement") with the Securities and Exchange Commission (the "SEC"). (*See* Compl. ¶ 16.) In the Information Statement, Medient advised that it had adopted a resolution approving an amendment to its Articles of Incorporation to increase the amount of authorized common stock from 500,000,000, par value $.001 per share to 5,000,000,000, par value $.001 per share. (*See* Compl. ¶ 16.) Medient also approved the increase in the amount of votes per shares attributable to each share of Medient's Series A Preferred Stock from 25 to 250. (*See* Compl. ¶ 16.)

In the Information Statement, Medient disclosed that, as of February 13, 2014, there were 140,418,483 shares of Medient's common stock that were issued and outstanding, and 10,000,000 shares of preferred stock issued and outstanding. (*See* Compl. ¶ 17.) The Information Statement also provided that it was not a notice of a special meeting of the stockholders, that no shareholder meeting would be held to consider any matters set forth in the Information Statement, and that Medient was not asking for a proxy. (*See* Compl. ¶ 18.) Further, the Information Statement provided that there were no dissenters' rights under the Nevada Revised Statutes for the matters contained in the Information Statement. (*See* Compl. ¶ 19.)

D.   **Medient Files a Form 10-K**

On March 31, 2014, Medient filed a Form 10-K with the SEC. (*See* Compl. ¶ 20.) In the Form 10-K, Medient allegedly indicated that it "suffered a yearly net loss of $1.3 million in 2013. (*See* Compl. ¶ 20.) Plaintiff alleges that Medient "through its board of directors (or agents thereof), publically explained that the $1.3 million dollar net loss was related to expenses on the

3

construction of the studio.  (*See* Compl. ¶ 21.)  According to the Complaint, Medient also allegedly reassured investors that the construction of the studio was moving forward and that ECIDA had agreed to "help []Medient complete" the studio.  (*See* Compl. ¶ 22.)

In the Form 10-K, Medient advised that as of March 31, 2014, there were almost 328 million shares outstanding.  (*See* Compl. ¶ 23.)

### E. The Trading of Medient Stock is Temporarily Suspended

On June 12, 2014, Medient issued a press release announcing changes in its management team.  (*See* Compl. ¶ 24.)  On June 25, 2014, the SEC temporarily suspended the trading of Medient's stock "because of questions that [were] raised about the accuracy and adequacy of publicly disseminated information concerning, among other things, [Medient's] total shares outstanding and its operation."  (*See* Tatum Decl., Exh. E; Compl. ¶ 26.)  The temporary suspension expired by its terms on July 9, 2014.  *Id*.

### F. Alleged Wrongdoing

Without any specific allegations of wrongful conduct, Plaintiff contends that Defendants misrepresented the financial health of Medient in its SEC filings.  (*See* Compl. ¶ 27.)  Indeed, without identifying a single specific purported misrepresentation, Plaintiff alleges that Defendants "issued a series of materially false and misleading statements to [Medient] and its shareholders, including Plaintiff, that failed to disclose that [Medient] was facing a liquidity crisis . . . ."  (*See* Compl. ¶ 28.)

Plaintiff also asserts, without pleading any factual basis, that Defendants diluted the equity of Medient's shareholders through the "unauthorized and illicit issuance of additional stock."  (*See* Compl. ¶ 29.)  Plaintiff alleges that Defendants breached their fiduciary duties by virtue of the purported dilution.  (*See* Compl. ¶¶ 31, 33.)  Further, Plaintiff alleges, in the most

general of manners, that Defendants breached their fiduciary duties by mismanaging corporate assets. (*See* Compl. ¶ 31.)

## II.     PROCEDURAL HISTORY

This action was commenced on June 27, 2014, by the filing of the Complaint in the Superior Court of Effingham County, Georgia. In the Complaint, Plaintiff alleges the following causes of action: (1) Violations of Section 14(a) of the Exchange Act (Compl. ¶¶ 42-45); (2) Breach of Fiduciary Duty (Compl. ¶¶ 46-50); (3) Gross Mismanagement (Compl. ¶¶ 51-54); (4) Waste of Corporate Assets (Compl. ¶¶ 55-57); (5) Equity Dilution (Compl. ¶¶ 58-60); (6) Unjust Enrichment (Compl. ¶¶ 61-63); (7) Punitive Damages (Compl. ¶¶ 64-65); and (8) attorneys' fees and expenses (Compl. ¶¶ 66-67.)

On August 26, 2014, Defendants removed this action to this Court based upon original Federal jurisdiction. On August 31, 2014, the Clerk of this Court granted Defendants' motion for an extension of time to answer or move with respect to the Complaint, and extended such time to September 16, 2014.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.     The Court Should Dismiss the Section 14(a) Claim and the Derivative Claims Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1.     Standards on a Motion to Dismiss

The Court's function on a motion to dismiss for failure to state claim is to assess whether the plaintiff set forth claims in the complaint upon which the Court may grant relief. *See Patel v. Patel*, 761 F. Supp. 2d 1375, 1378 (N.D. Ga. 2011). In determining the motion, the Court is required to accept the well-pled factual allegations as true and draw all reasonable inferences in the

plaintiff's favor.  *See Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1348 (N.D. Ga. 2012) (citing *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1273, fn.1 (11th Cir. 1999)).[2] Conclusory allegations, however, are not entitled to such a presumption; nor are legal conclusions couched as factual allegations.  *See Wedemeyer v. Pneudraulics, Inc*., 510 Fed. Appx. 875, 877 (11th Cir. 2013).  *See also Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1306 (N.D. Ga. 2012) (Court noted that "while the factual allegations set forth in the Complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions....").  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to defeat a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rather, to avoid dismissal, a plaintiff must make sufficient ***factual allegations*** to state a claim that is plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is "plausible" on its face where the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable to plaintiff for the alleged misconduct.  *See id., See also Iqbal*, 556 U.S. at 163.  "Plausibility" is not akin to "probability," but requires more than the "sheer possibility" that a defendant has acted unlawfully.  *See Twombly*, 550 U.S. at 556.  As explained by the Supreme Court in *Twombly*:

> [A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level. . . .

---

[2] In considering a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of relevant public documents that were required to be filed with the SEC.  *See Washtenaw County Emp. Ret. Sys. v. Wells Real Estate Inv. Trust*, 2008 U.S. Dist. LEXIS 53652, at *9 (N.D. Ga., Mar. 31, 2008).

6

550 U.S. at 555 (omitting internal quotations and citations).  Therefore, where a complaint merely sets forth facts that are consistent with a defendant's liability, it falls short of the line between "possibility" and "plausibility" of entitlement to relief, and must be dismissed.  *See id.* at 557.  *See also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557); *Duncan v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 183623, at *10 (N.D. Ga., Dec. 20, 2013) (Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint cannot survive a Rule 12(b)(6) motion).

As demonstrated below, the Complaint fails to plead facts sufficient to state viable causes of action against Defendants.  Thus, the Court should dismiss the Complaint in its entirety.

### 2. Plaintiff's Claim for Violations of Section 14(a) of the Exchange Act Fail as a Matter of Law

In Count I of the Complaint, Plaintiff asserts a claim for violations of Section 14(a) of the Exchange Act based upon purported unspecified misrepresentations and omissions contained in Information Statements Medient filed pursuant to Section 14(c) with the SEC on March 17, 2014[3] and August 28, 2012.  (*See* Compl. ¶¶ 42-45.)  As demonstrated below, Plaintiff woefully fails to state a viable claim for violations of Section 14(a).

Pursuant to Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder, it is unlawful for any person to issue a proxy statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.  See 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a).  To state a claim under Section 14(a), a plaintiff must allege that: (1) a proxy

---

[3] The February 13, 2014 Information Statement was a preliminary Section 14(c) Information Statement and the March 17, 2014 Information Statement was the definitive Section 14(c) Information Statement.  (*See* Tatum Decl., Exs. B and C.)

statement contained a material misrepresentation or omission which (2) caused plaintiff's injury, and (3) that the false or misleading proxy statement was an essential link in causing the loss-generating corporate action. *See Hulliung v. Bolen*, 548 F. Supp. 2d 336, 339 (N.D. Tex. 2008). *See also Knollenberg v. Harmonic., Inc.*, 152 Fed. Appx. 674, 682 (9th Cir. 2005); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007); *In re Marsch & McLennan Cos. Sec. Litig.*, 536 F. Supp. 2d 313, 320-21 (S.D.N.Y. 2007).

Where, as here, the Section 14(a) claim is grounded in alleged fraudulent conduct, a plaintiff must meet the heightened pleading requirements of Rule 9(b) and the PSLRA. *See Police & Fire Ret. Sys. v. SafeNet, In*c., 645 F. Supp. 2d 210, 224-25 (S.D.N.Y. 2009). *See also In re March & McLennan*, 536 F. Supp. 2d at 319-20 (applying the PSLRA and Rule 9(b) to claims for alleged violations of Section 14(a)). Pursuant to Rule 9(b), a complaint alleging fraud must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s heightened pleading standard, a complaint must set forth: (1) precisely what misrepresentation or omissions were made; (2) the time and place of such representations and the persons responsible for making them; (3) the content of such statement and the manner in which they misled plaintiff; and (4) what the defendant obtained as a result of the fraud. *See Findwhat Inv. Grp. v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). In other words, Rule 9(b) requires a plaintiff to specify the who, what, where, when, why and how of the alleged fraud. *See In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1362 (N.D. Ga. 2005).

The PSLRA reinforces the heightened pleading requirements of Rule 9(b) and imposes additional pleading requirements in connection with pleading securities fraud claims. *See id.* The "PSLRA requires a plaintiff to specify each statement or omission alleged to be misleading, the reason why the statement or omission is misleading and the facts surrounding the alleged

misrepresentation." *See id.  See also* 15 U.S.C. § 78u-4(b)(1).  Therefore, as explained by the Second Circuit, plaintiffs "must do more than say that the statements . . . were false and misleading, they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2nd Cir. 2004).

The PSLRA also requires a plaintiff to allege with particularity the facts giving rise to a strong inference that the defendant acted with the requisite state of mind.  15 U.S.C. § 78u-4(b)(1).  To meet this requirement, a plaintiff "must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d at 1362.

> a.  <u>Count I Fails as a Matter of Law as Against Paterson and Shapiro Because They Were Not Directors at the Time the Proxy Statements Were Issued</u>

Initially, Plaintiff cannot state a claim for violations of Section 14(a) fails because Shapiro and Paterson were not members of Medient's Board of Directors at the time the Section 14(c) Information Statements were issued.  A director or other executive cannot be liable for issuing a misleading proxy statement if he or she was not with the company at the time the proxy statement was issued.  *Hulliung*, 548 F. Supp. 2d at 339.  *See also Virginia M. Damon Trust v. N. Country Fin. Corp.*, 325 F. Supp. 2d 817, 824 (W.D. Mich. 2004) (Court held that directors that became members of the board after the proxy statements at issue were distributed could not be liable under Section 14(a)).

Here, Paterson did not become a member of Medient's Board of Directors until May 22, 2014 – more than 2 months after the March 17, 2014 Information Statement was issued by Medient's Board.  (*See* Tatum Decl. Exh. A.)  Thus, Paterson was not a member of the Board at

9

the time the statements at issue were distributed, and therefore, cannot be held liable for any alleged violations of Section 14(a) with respect to same.

Similarly, Shapiro was not – and has never been – a member of Medient's Board, and the Complaint never alleges that Shaipro was a director. The March 17, 2014 and August 28, 2012 Information Statements were ***issued by Medient's Board of Directors***. (*See* Tatum Decl., Exs. C and D.) As a result, it cannot be alleged that Shapiro issued the Section 14I Information Statements at issue in Count I. *See In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig*., 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010) (Court dismissed Section 14(a) claim against corporate officers because Section 14(a) liability only attached to those that solicited the proxy and the proxy at issue was solicited by the directors, not the officers).

Based upon the foregoing, the Court should dismiss Count I as against Paterson and Shapiro.

### b. Plaintiff Fails to Identify Any Alleged Misrepresentation or Omission in the Information Statements

As discussed above, Plaintiff is required to allege, with the specificity required by Rule 9(b) and the PSLRA, that Defendants made specific misrepresentations or omissions in the Information Statements to state a claim for violations of Section 14(a). *See In re Marsh & McLennan Cos. Sec. Litig*., 536 F. Supp. 2d at 320-21; *Police & Fire Ret. Sys*., 645 F. Supp. 2d at 226. Plaintiff woefully fails in this regard.

The Complaint fails to set forth a single, specific, alleged misrepresentation or omission in any of the three Information Statements mentioned in the Complaint. To the contrary, Plaintiff merely alleges that:

> 43. Upon information and belief, Defendants issued, caused to be issued, and participated in the issuance of materially false and

> misleading statements to shareholders, including Plaintiff which were contained in Defendant Medient Studios's Form 14 Proxy Statements (the "Proxies") filed on March 17, 2014 and August 28, 2012, which misrepresented or failed to disclose, *inter alia*, the facts set forth herein. . . .
>
> 44. Upon information and belief, Defendants participated in the filing of inaccurate and inadequate information concerning, among other things, the company's total shares outstanding and its operations. Plaintiff also represented in its Proxies that common stockholders could not take any action to amend or influence the actions disclosed in the Proxies.

(Compl. ¶¶ 43-44.)

Plaintiff's general allegations fail to set forth the purported misrepresentations in the Information Statements with any particularity – never mind the particularity required under Rule 9(b) and the PSLRA. Plaintiff fails to set forth precisely the content of the alleged misrepresentations, when and where such misrepresentations were made, and why the purported representations were false.[4] Nor does the Complaint allege how Plaintiff was allegedly misled by the purported representation, or what Defendants stood to gain therefrom.

Based upon the foregoing, Plaintiff has failed to sufficiently allege a claim for violations of Section 14(a) of the Exchange Act. Accordingly, the Court should dismiss Count I pursuant to Rules 12(b)(6) and 9(b) and the PSLRA.

### c. Plaintiff Has Failed to Plead the Essential Link Between the Information Statements and Any Alleged Injury

Even if the Court finds that Plaintiff has sufficiently alleged a misrepresentation or omission, Plaintiff cannot establish the requisite link between the Information Statements and any harm alleged in the Complaint. As set forth above, to state a claim for violations of Section

---

[4] While Plaintiff recites portions of the February 13, 2014 Information Statement in the Complaint (*see* Compl. ¶¶ 17-19), she never alleges that any of these representations and statements were false.

11

14(a), a plaintiff must plead an "essential link" between the proxy statements at issue and the harm alleged. To establish an "essential link," it must be demonstrated that the plaintiff's injury resulted from a transaction directly authorized by the proxy. *See Hulliung*, 548 F. Supp. 2d at 340. *See also Police & Fire Ret. Sys.*, 645 F. Supp. 2d at 226.

Here, Plaintiff cannot establish any link whatsoever between the Information Statements and any alleged injury. The Information Statements fail to allege any alleged injury or harm that was caused by the Information Statements. First, the Information Statements were not proxies and were not issued to solicit a vote. (*See* Tatum Decl., Exs. B, C and D.) Thus, no transaction was authorized by the Information Statements. Indeed, the Information Statements did not even solicit a proxy vote and, therefore, did not authorize any transaction.

Second, Plaintiff fails to allege that she took any action, failed to take any action, or was otherwise injured by any alleged misrepresentation authorized by the Information Statements. Thus, Plaintiff fails to allege any injury that was supposedly caused by any alleged misrepresentation in the Information Statements.

Therefore, Plaintiff cannot establish any link – never mind the "essential link" – between the Information Statements and any alleged harm necessary to state a claim for a violation of Section 14(a) of the Exchange Act. Accordingly, Count One of the Complaint fails as a matter of law and must be dismissed.

### 3. Plaintiff's Derivative Claims Should be Dismissed Because She Failed to Adequately Allege Demand Futility

A pre-suit demand on a corporation's directors is a predicate to a derivative action. *See In re Friedman's, Inc. Deriv. Litig.*, 386 F. Supp. 2d 1355, 1360 (N.D. Ga. 2005). Pursuant to Fed. R. Civ. P. 23.1, a plaintiff bringing a derivative action must allege, with particularity:

      (A)    Any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

      (B)    The reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3). This heightened pleading requirement is in recognition of the extraordinary nature of the derivative suit – a device only to be used when a corporation will not act to redress injury to itself. *See Stepak v. Addison*, 20 F.3d 398, 403 (11th Cir. 1994).

    Rule 23.1's pleading requirement is a matter of Federal procedure, while the question of whether the demand on the corporation is excused is determined by the law of the state of incorporation. *See Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 97-98 (1991). *See also In re Friedman's Inc., Deriv. Litig.*, 386 F. Supp. 2d at 1360; *In re AFC Enter., Inc. Deriv. Litig.*, 224 F.R.D. 515, 518 (N.D. Ga. 2004). To meet Rule 23.1's heightened pleading requirement, a shareholder must set forth particularized statements that demand was made and refused or that demand would have been futile. Conclusory allegations will not satisfy the heightened standard. *See Stepak,* 20 F.3d at 403.

    Because Medient is a Nevada corporation, Nevada law controls the determination of whether demand on the corporation is excused. Under Nevada law, because directors, rather than shareholders, manage a corporation, an aggrieved shareholder must first demand that the board of directors take the desired action or plead that demand is excused because it would be futile. *See Stepak* 20 F.3d at 402 (11th Cir. 1994). *See also La. Mun. Police Emp. Ret. Sys., Inc. v. Wynn*, 2014 U.S. Dist. LEXIS 33487, at *12 (D. Nev., Mar. 27, 2014) (applying Nevada law, the Court noted that a shareholder seeking to bring a derivative claim must demand that the board of directors address the alleged harm before the shareholder brings the action unless the

13

shareholder can demonstrate that demand would have been futile). A plaintiff that elects to proceed without making a pre-suit demand on the board of directors bears the burden of establishing demand futility. *See La. Mun. Police Empl.*, 2014 U.S. Dist. LEXIS, at *12.

In *Shoen v. Sac Holdings Corp.*, the Nevada Supreme Court, following Delaware law, articulated the standards to be applied in determining whether a demand is excused under Nevada law. 137 P.3d 1171 (Nev. 2006). In *Shoen*, the Court held that to sufficiently assert that demand is futile:

> the shareholder must plead, with sufficient particularity, that reasonable doubts exist that the directors are independent and disinterested or are entitled to the protection of the business judgment rule. However, where the contested corporate transaction is not the result of director action, the demand futility analysis is limited to whether a majority of the directors had a disqualifying interest in the matter or were otherwise unable to act on the demand with impartiality.

*Id.* at 1187.

The *Shoen* Court explained that to allege a disqualifying interest, a shareholder must allege that a majority of the board would be materially affected by the board's decision in a way that is not shared by the corporation or its shareholders. *Id.* at 1183. The Court, however, instructed that:

> Allegations of mere threats of liability through approval of the wrongdoing or other participation . . . will not show sufficient interestedness to excuse the demand requirement. Instead, as Delaware courts have indicated, interestedness because of potential liability can be shown only in those rare cases where defendants' actions were so egregious that a substantial likelihood of director liability exists.

*Id.* at 1183-84.

In the Complaint, Plaintiff contends that demand on Medient's Board of Directors would

14

have been futile.  (*See* Compl. ¶ 40.)  Plaintiff, however, fails to plead that demand was futile with the particularity required by Fed. R. Civ. P. 23.1.  To the contrary, Plaintiff's allegation of futility is based entirely upon generalized, conclusory allegations, with no factual support, that Defendants could not have been disinterested in the allegations of purported wrongdoing because they faced threats of liability – the same type of allegations found insufficient under Nevada law to establish demand futility.

In particular, Plaintiff alleges that Defendants "authorized, approved , ratified or signed" Medient's "2012, 2013 and 2014 SEC Forms" which purportedly contained misrepresentations concerning Medient's financial status.  (*See* Compl. ¶ 40(c).)  Plaintiff alleges that these supposed misrepresentations could potentially expose Defendants to liability for securities fraud. Putting aside the fact that Plaintiff has not alleged a single specific misrepresentation made by Defendants contained in any public filing regarding Medient's financial condition, or otherwise, this is the exact sort of allegation of a "mere threat" of liability that the Nevada courts have found insufficient to allege  that a majority of Medient's Board was interested and could not have made an independent determination on the issues raised in the Complaint.

Further, Plaintiff allege that Medient's Board of Directors could not have exercised independent judgment because if Medient was required to sue "itself or certain officer" to redress the wrongs alleged in the Complaint, the directors would lose directors and officers insurance coverage.  (*See* Compl. ¶ 40(e).)  Again, this general allegation does not adequately allege that the directors were interested.  Indeed, if such an allegation could suffice to establish futility, demand would be excused in virtually every action where directors or officers were alleged to have committed breaches of fiduciary duty or other wrongdoing.

Finally, Plaintiff's generalized allegation that demand is futile because Medient's Board participated in and approved of the wrongs alleged in the Complaint, and therefore are not disinterested, are insufficient, as a matter of law, to adequately allege that demand is futile. (*See* Compl. ¶ 40(d).)   No specific facts have been alleged to support this entirely conclusory allegation.

Accordingly, Plaintiff has failed to sufficiently allege that demand on Medient's Board of Directors was excused because it would have been futile.  As a result, the Court should dismiss Plaintiff's derivative claims.

### B. Plaintiff Lacks Standing to Assert the Claims Contained in the Complaint in Her Individual Capacity

The Court should dismiss the individual claims asserted in the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiff lacks standing to maintain these claims in her individual capacity.  A Court may dismiss a claim for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).

Standing is a necessary component of the Court's subject matter jurisdiction under Article III of the United States Constitution. *ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd.*, 557 F.3d 1177, 1190 (11th Cir. 2009). *See also Feltman v. Prudential Bach Sec.*, 122 B.R. 466, 470 (S.D. Fla. 1990) (Court noted that standing is jurisdictional in nature and "is always a threshold inquiry") (citing *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990)).  To establish standing, a plaintiff must demonstrate: (1) that she has suffered an "injury-in-fact" as a result of the alleged misconduct; (2) the injury can fairly be traced to such misconduct; and (3) the injury is likely to be redressed by a favorable decision by the court.  *See Valley Forge Christian Coll. v. American United for Separation of Church & State, Inc.*, 454 U.S. 464, 472

(1982). *See also Regions Bank v. Kaplan*, 2014 U.S. Dist. LEXIS, at *7 (M.D. Fla., Mar. 31, 2014) (same).

In determining whether an action is individual or derivative the Court must analyze the body of the complaint and relief sought. Except where a shareholder has a special relationship with a director, shareholders only have the right to bring a derivative action, not a direct or individual action, against a director or officer for violations of fiduciary duty directors owe them or other wrongs. *See Sweeney v. Harbin Elec., Inc.*, 2011 U.S. Dist. LEXIS 82872, at *3 (D. Nev., July 27, 2011).

It is well settled that claims for harm to the corporation shared by all shareholders, and not related to an individual shareholder, are derivative in nature. *See Cohen v. Mirage Resorts, Inc.*, 62 P.2d 720, 733-34 (Nev. 2003). Thus, where a shareholder's claim alleges damage by virtue of a decline in the value of his shares, that is a classic derivative injury that must be redressed by a derivative action. *See Sweeney*, 2011 U.S. Dist. LEXIS 82872, at *4 (quoting 3 Stephen A. Radin, *The Business Judgment Rule, Fiduciary Duties of Corporate Directors* 3626 (6th ed. 2009).) Likewise, actions to enforce corporate rights and redress injuries to the corporation are derivative claims. *See id.*

On the other hand, a plaintiff may only bring a direct action when the plaintiff suffers an injury unlike that shared by the shareholders generally. The plaintiff must suffer some individualized harm that is not suffered by the shareholders at large. *Id.* at *7-8.

In *Sweeney*, the plaintiff commenced a class action against members of the board of Harbin Elec. Corp. ("Harbin") and others alleging wrongful conduct in connection with a proposed sale of all of Harbin's outstanding stock. *Id.* at *2. Plaintiff alleged that the sale price of the stock was inadequate. *Id.* Because the complaint was unclear, the Court was forced to

analyze whether it was being asserted as a direct claim or a derivative one. *Id.* at *3.

The Court held that, under Nevada law, the claims were derivative in nature. *Id.* at *6-7. In so holding, the Court analyzed the Complaint, and found that the type of harm allegedly suffered, *i.e.,* "that the directors issued (more accurately, that they may be preparing to issue) shares of stock at below market value, thereby depriving the corporation of income and depressing the price of the shareholders' stock as a general matter" was shared by all shareholders. *Id*. (citing *Lochhead v. Alacano*, 662 F. Supp. 230, 232-33) (D. Utah 1987) (Court held that defendants' alleged fraudulent issuance of options which diluted the plaintiff's interest in the company was a derivative claim)).

Here, a review of the Complaint makes it clear that the claims asserted therein are derivative in nature, not direct. At its core, the Complaint seeks redress for supposed harm to Medient, or to Medient's shareholders as a whole. For example, in the breach of fiduciary duty claim, Plaintiff seeks to recover for alleged damage to Medient's "reputation, financial health, business goodwill, and its very existence as a corporation." (*See* Compl. ¶ 49.)  This is a derivative claim for alleged harm to Medient.

Likewise, Plaintiff's claims for gross mismanagement and waste of corporate assets are typical derivative claims. (*See* Compl. ¶¶ 51-57.)  In both of these claims, Plaintiff merely alleges damage to Medient, and damage allegedly "sustained by the devaluation and dilution of her shares . . ." (*See* Compl. ¶ 53.)  Such claims are derivative in nature as they seek redress for alleged harm to Medient or alleged harm suffered by Medient's shareholders as a whole.

Plaintiff's claim for unjust enrichment also seeks redress for alleged injury to Medient. Specifically, this action alleges that a June 9, 2014 stock issuance to Shapiro was without consideration and that he was unjustly enriched. (*See* Compl. ¶¶ 61-63.)  Clearly, this action is

derivative as Medient – not Plaintiff individually – is the party that was allegedly injured by the issuance of stock.

Finally, Plaintiff's claim for equity dilution is also derivative in nature. Under settled Nevada law, such a claim is derivative in nature. *See Sweeney*, 2011 U.S. Dist. LEXIS 82872, at *5.[5]

Accordingly, Plaintiff lacks standing to assert the claims in the Complaint to the extent that they seek to assert individual claims against Defendants. Consequently, this Court lacks subject matter jurisdiction over Plaintiff's individual claims and this action must be dismissed.

## IV.  CONLCUSION

For all the foregoing reasons, the Court should grant Defendants' motion in its entirety and dismiss the Complaint as against Defendants.

This 16th day of September, 2014.

HUNTER, MACLEAN, EXLEY & DUNN, P.C.

s/John M. Tatum
John M. Tatum
Georgia State Bar Number 699000
Rachel Young Fields
Georgia State Bar Number 747407
Carson Bacon Penney
Georgia State Bar Number 231877
*Attorneys for Defendants Koppelman, Giamichael, Paterson, Shapiro and Medient Studios, Inc.*

Post Office Box 9848
Savannah, Georgia  31401
Telephone: (912) 236-0261
Facsimile: (912) 236-4936
jtatum@huntermaclean.com
rfields@huntermaclean.com
cpenney@huntermaclean.com

---

[5] Counts VII and VIII, which assert claims for punitive damages and attorneys' fees, respectively, are also derivative in nature because they are not separate, independent, claims, but merely seek additional remedies for the other claims in the Complaint.

# CERTIFICATE OF SERVICE

I, John M. Tatum, hereby certify that on September 16, 2014, I have electronically filed **Defendants Charles Koppelman, Joseph Giamichael, David Paterson, Joel Shapiro a/k/a Jake Shapiro and Medient Studios, Inc.'s Motion to Dismiss and Brief in Support** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>Ashleigh Madison
>Southeast Law, LLC
>426 Barnard Street
>Savannah, Georgia  31401

>HUNTER, MACLEAN, EXLEY & DUNN, P.C.


>  *s/*John M. Tatum
>John M. Tatum
>Georgia State Bar Number 699000
>*Attorney for Defendants Koppelman, Giamichael,
>Paterson, Shapiro and Medient Studios, Inc.*

Post Office Box 9848
Savannah, Georgia  31412
(912) 236-0261
Email:  jtatum@huntermaclean.com